Your Honor, the first case of the afternoon, Session 209, Senate 9-1, Village of Glendale Heights v. Glen Ayre Enterprises. On behalf of the Admirals, Mr. Glenn Gaffney. On behalf of the Attorney General, Mr. Ian Hewitt-Acker. Mr. Gaffney. May it please the Court, Mr. Acker, thank you for this opportunity to appear personally before this Honorable Court on a gorgeous July afternoon. I've heard from appellate court specialists that before filing an appellate court brief, you should edit the brief, read the brief, and put it down. Pick it up a few days later, and then decide if that's what you want to file. That's sound advice. Here, I'd like to clarify one issue that I would like to make mention of. Should have followed that sound advice. I use the term agreement as it relates to what Glen Ayre did after the court ruled that the village would have the right to enforce its police power pertaining to the subject property. This relates to the remaining counterclaims that Glen Ayre had. And what occurred was Glen Ayre had filed an affirmative defense, in part saying that there were pre-existing non-conforming uses, i.e. residential uses of their property, and that to the extent that there was, if there was, presuming arguendo, a valid annexation or annexation agreement, that that agreement specifically provided that these pre-existing non-conforming uses would continue to be allowed, i.e. the residential uses. So at the conclusion of the first aspect of the trial, before presenting any evidence on the remaining counterclaims, I pointed out to the court that there was this remaining issue that the court had not ruled on. The court acknowledged and indicated that it would be appropriate because it really was not a tribal issue of fact. It really wasn't contested by the village that this pre-existing non-conforming residential use existed, notwithstanding the fact that there was purported commercial zoning for the subject property. In that regard, then, the village acknowledged that, and the court acknowledged the same, and then we proceeded then to non-suit the remaining counts based upon the acknowledgement, not agreement per se, but acknowledgement of both the village as well as the court. Thank you for that opportunity to clarify that point. In regards to the overall big picture of this case, obviously the village asserts that it has the authority to enforce its police powers on the subject property and references Statute 1115.1-4 for that proposition. Obviously that statute and the underlying litigation is based upon the proposition, first and foremost, that the initial foundation of the authority of the village to exercise these police powers is based upon the validity of this annexation. And in that regard, of course, Glenair defended on the basis that the underlying annexation was not invalid, and primarily so because of the failure to comply with the statutorily required and mandated requirements of Section 718. Obviously, the statute states, without ambiguity, that it is required to have 51% of the resident electors residing in the subject territory sign a petition for annexation in order for the village to have, essentially, jurisdiction to enter an annexation ordinance. And it is undisputed, the village has never disputed, not throughout the trial court process, not in response to the motion for summary judgment, and certainly not in the appellate court briefs, and I don't think they'll do it here today, that there were 13 or so resident electors residing on the subject property during this time frame, and that not one of them, not one of the resident electors, signed the petition for annexation. And pursuant to the statute, that is a fatal defect, and Illinois law, the Illinois Supreme Court has said in the Inmate Jordan Company case, and other cases have said that that fatal defect can be raised at any time that the village seeks to use its authority as it relates to the subject property. That it could be the annexation, void at its inception, can be subject to direct or collateral attack whenever its authority is so invoked. How does that tie into the statute of limitations issue? Certainly. The statute of limitations, of course, clearly is the issue in this case, because as the trial court acknowledged, there were good defenses that the defendants raised here, but that the court would not entertain such defenses by virtue of the statute of limitations. So the limitations issue, then, is whether or not the words of the statute, section 7146, applies to defenses. And the words of the statute, then, are no person or entity shall commence an action contesting either directly or indirectly the annexation of any territory to a municipality unless initiated within one year from the date such annexation becomes final. If that statute applies to a defense where the landowner merely says, I'm defending your attempted use of your authority, then the trial court's decision makes sense. But in order to do that, you have to interpret the statute to preclude defenses. And that's really the foremost issue here, the words commence an action. Are those words superfluous? Were those words not intended by the legislature? The word commence is a verb. It means to initiate. There's been, as I set forth in my brief, a number of statutes using the term commence an action. There's been a lot of case law defining the term commence an action. And all of those statutes, preexisting this statute, all of those cases pre- Counsel, let me interrupt you. Yes. The point you're making, the terminology commence an action, but if we interpret it that way, and I'm not saying it's at all an odd way to interpret it, what does it do to this one-year statute of limitations then? Well, what it does is it allows a landowner to defend a village's authority if and when there's a void ab initio problem like we have here. That's what it does. A landowner cannot overturn the entire apple cart as it relates to what the village may have been accomplishing with other territories. But a landowner would have the right to defend the purported authority on a void ab initio annexation. Well, I understand that it would have the effect, that that would be the effect. Yes. They could defend it then, but how does the, I mean, what's the purpose of a one-year statute of limitations? And the village can never enforce its ordinance then if there's a challenge to it, if there's a basis for a challenge. It seems to gut the whole purpose of a one-year statute of limitations. It doesn't gut the purpose from the standpoint that it doesn't negate any other territories that were annexed. It only allows the landowner to defend the authority of the village vis-a-vis its particular property. And in that regard, you know, if you look at the public policy issue, assuming our innuendo that a village purports to annex all contiguous property by filing void annexation ordinances as it relates to all property that it's contiguous to. Now, are we to say then in regards to every one of those landowners, if any one of those landowners then does not file a quo morento action within one year, that there's a presumed, then there's the landowner and its successors, by the way, are forever barred from raising this void-up initio argument just because the village purports to create an annexation? Villages don't have... I think the right question is yes under the statute, isn't it? That's my point. No, the legislature easily could have said that, used the word defend, as well as commence an action. Well, let's ask this then. What is your interpretation of the word indirectly? Is not what the defendants are seeking to do indirectly attacking the ordinance and know you end up in the same place by exalting form over substance? You still end up basically voiding the annexation agreement. Well, there are certainly Illinois Supreme Court cases, there's case law that talks about that word indirectly. And the word indirectly sometimes relates to when a landowner or someone related to a landowner, for example, attempts to attack a zoning aspect or some other aspect of what occurred initially. So that word indirectly, if you look at where it is in the sentence, directly or indirectly what? Commence an action. It still relates back to commence an action. The word indirectly relates back to the term commence an action. How would you indirectly commence an action? Well, what it means is, although it may not be a quo morento action, for example, if you file a suit, if you commence an action attacking some aspect of what occurred, such as in the Bloomingdale case, that's filing an action and it's indirectly attacking the underlying zoning or the zoning, for example, which indirectly attacks the underlying annexation. That's indirectly filing, commencing an action which purports to attack the ordinance. But it's still the commencement of an action that's crucial here. Those are crucial words. Those words were intended by the legislature. And what about this? And also the saving provision of Section 13207 would be applicable here, too. Because that statute specifically says, and it has been the law of this state forever, that whenever someone files suit against you, you have the right to defend. That has never been precluded in this state. Some states it is. So what would be, then, the practical effect of your argument? What is, then, the statute of limitations here on attacking an annexation agreement? It's one year for filing suit, one year to attack, to overturn it in its entirety. But as far as defending the village's authority vis-à-vis your particular property, you can defend. Without limitation. Forever? Without limitation, then, you're saying. Unless it's done right. Yes. Unless it's done right, you know, it puts the village on notice that they have to do it right and redo it, which really should have happened here or should still happen. And you think there's a legislative intent to not have a specific limitation when you're defending against the village. That has to be the outgrowth of your argument. There certainly, I do think that there's a legislative intent here, that the court allowed landowners to continue to defend. And specifically it says commence an action. You know, I mean, I don't know if you want to enter into the rules of statutory construction because it says what it says. And express your mutinous as exclusio alterius. They could have said defend. They could have precluded it, but the statute doesn't say that, doesn't require it. We don't have access to any legislative history on this? No. No legislative history on this? No. Okay. And even if we presume that there is a presumed, that a defense is a presumed counterclaim, an analogous counterclaim, that would somehow, that would then be brought into the statute of limitations, Section 13207 specifically says that that doesn't apply. And, in fact, one of the cases that the village purports to rely upon is City of Des Plaines versus the City of Mount Prospect. The only case that comes up with this rather maverick concept at all, that a defense could be construed as an analogous type of counterclaim, that's just, I don't know if I want to call it dicta, but that's just an aside because the ultimate ruling of the case was that Mount Prospect prevailed because of the saving provision of Section 13207. In other words, the rule there is as long as it's in response to a complaint filed by another, the statute of limitations is inapplicable. All right, so just so I can capture the essence of your argument, what you seem to be saying is that the legislature evinced an intent to insulate, finalize annexations from all legal attacks directly, but not from attacks by homeowners, if you will, attack in defending the village's action. I don't think the word directly or incorrectly is really the focus here. Well, forget about that. I think the focus is commenced in action. Right. I mean, I don't know how you can write that out in the statute. Attacks commencing in action, but not by way of defense. You're drawing that distinction. There has to be a distinction. A defense is not commencing in action. I looked at the statute. A counterclaim would not be? Well, a counterclaim would. A counterclaim would, yes, but we filed no counterclaim attacking. That would be a Cold War influence. But doesn't that in essence have the same effect? Don't you still end up in the same place? You're invalidating a finalized annexation agreement. How do you get around the argument you end up in the same place? All it does is it prevents the village from filing suit against the landowner when its basis is void of an issue. That's what it does. It prevents the village from filing suit. It allows the landowner to defend an action brought by the village, but it leaves everything else intact. So it's a continuity issue, a contiguousness vis-a-vis other properties, for example. That's left intact by the legislature because it allows you to defend when the village wants to assert its right on your property, but doesn't allow you to make it worse on the village, if you will, by getting a Cold War rental action, the result of which a sustained Cold War rental action holding it void of an issue because the result of that then would impact other properties. So you're saying it just operates as a defense on my property, and the outcome of this case cannot be used by anybody else to say that annexation was void and therefore doesn't apply to me. They would have to wait for the village to enforce something on their property and then raise the same defense. Assuming they have the same defense. Well, obviously, but they could only be raised as a defense, even though you would have a decision that says... So, for example, here, the Glen Eyre, for example, here, other properties were annexed along with the Glen Eyre property, the defendant's property. We're not trying to overturn that or seeking an order to overturn any of that. That can stand as far as we are concerned. We're only defending the village's use of its authority on a void as to them. Well, it would stand until the village tried to enforce an ordinance that the owner of that land didn't like, and then he'd file a defense. No, because the only resident electors were... I'm sorry, Your Honor, but the only other resident electors were on the Glen Eyre property. There weren't any resident electors on the other properties that were annexed. The 13 people who resided there, this fatally defective flaw amongst others, by the way, but I'm just highlighting that one. But that only applies to the Glen Eyre property and the Schneider property. It doesn't apply to the insignia homes, townhouses, and what have you there that were also annexed at the same time. There were no resident electors there. And that's a prime example of what the legislator would have intended. The legislator... Well, then the idea that they can't challenge it is meanless because they challenge that they wouldn't prevail anyway. I mean, the time limitation isn't the only thing that bars anybody from attacking the rest of the annexation ordinance. They don't have the same underlying problem that you're claiming to have, so they'd lose it on the merits anyway. The other land orders? Yeah. Yeah, the other land orders are subject to it. Right, they're subject to it for two reasons. The statute of limitations is also that they don't have the defense that you have. True. Okay, so the statute of limitations doesn't apply to that. All right, you're going to have time to rebuttal if you have a quick point you want to make before that. I'll wait to rebuttal. Okay, thanks, Constable. Thank you very much. Sure. Good afternoon, Your Honors. Counsel, ladies and gentlemen, my name is Andrew Acker. I'm an attorney from the law firm of Storino, Grimella, and Durkin. I'm appearing this afternoon on behalf of the Village of Glendale Heights. I was very interested to hear your questioning regarding the finality and the intent of the legislature of having these annexation statutes established for purposes of knowing that there is finality in these proceedings. The effect of an annexation is significant, and it is the alteration of jurisdictional boundaries. Jurisdictional boundaries are extremely important for everyone to know, for public policy reasons, for practical reasons. The municipalities rely upon those boundaries because they know that they have the ability to regulate by way of their police powers, to zone, to exercise control over them, and to have an orderly development of the properties. Certainly, you have an expectation that the finality of these annexations is going to last, and that people can rely on them so that they can expend significant monies for the development of their infrastructure, for the construction of schools, for parks, for any variety of municipal projects that will naturally occur as a result. The finality is emphasized and underscored by the statute of limitation proceedings that you have one year to challenge them. In the event that you don't do that, then the municipalities have a reasonable expectation that their jurisdictional boundaries will be established. That would seem to support some underlying policy reasons on why that would be true, but your opposing counsel keeps emphasizing, and it's not a specious argument, language in the statute that says commencement of an action. He is saying that the assertion of an affirmative defense is fundamentally different than the commencement of an action. Indeed. So how do you distinguish, and how do you end up saying that an affirmative defense is the functional equivalent of a commencement of an action? I believe that the legal distinction as defined is that an action will result in having affirmative relief granted to you, whereas a defense merely avoids the effect of the claim. Now, is this your interpretation, or do you have some case law that supports that argument? No, I believe that, and I believe that is established by way of the Mount Prospect case. The notion here is, at the end of the day, if the defendant here, Glen Eyre, is successful in asserting their affirmative defenses, not only do they get to not have a judgment entered against them, they get to have the same legal effect as would be granted if they brought a quo morto, i.e., they would have the annexation voided. As to them, or as to the whole, everybody in this area? I would submit that it's the entire annexation. I'm unaware of cases where they parse out the annexation parcels. My notion here, Your Honor, is that we're now 10 years from the adoption of the village's annexation of this property. The signatory of that petition is the principal of Glen Eyre and the individual who owns the property. He signed it. Now, four years after the annexation has been in place, the jurisdictional boundaries have been established, the village is now beginning to allow development and zoning, infrastructure installation. All of a sudden, he doesn't like it. He's got this golden parachute in his back pocket that, I don't like what they're doing to me. I don't like the enforcement of their ordinances, of their zoning against me. And guess what? I've got my trick. My trick is I can get out of it. Even though I let the one year go by, I didn't affirmatively assert my core motto. I knew I was fully aware of all of the facts necessary to assert core motto, and I let it go. So you're saying basically the person lays back, and in essence, knowing they can't use this as a sword, they end up using the shield to accomplish the same result. Exactly. And I would submit, Your Honor, that while there may be some, you know, in this instance, I personally have great promise in considering the actual language used of the statute of limitations. It says what it says. On the other hand, you have legions of cases emphasizing the particular legislative purpose of having finality for these things. And it seems like… So are you saying there's a tension between the literal language and the policy that's enumerated there? Certainly, I argue that they can be harmonized. And having said that, you know, I could argue the other side just as easily. This is not an easy issue. And this is one I submit is a very significant issue for this court and one that needs to be established. If this position is accepted, this area of law is going to go up for grabs. Who knows how many other people have these little golden parachute tricks in their back pocket that they're waiting to pull out for the day that they have a disagreement with the municipality and they don't want to be there anymore. I would submit that this limitless timeframe that counsel has suggested, well, we can bring it up whenever they decide to enforce it against us. We can have our way. And that was part of the intent of my discussion of the hypotheticals. They could let this thing… The annexation agreements are good for 20 years. They could wait until the 19th year, 11th month, and all of a sudden the village wants to enforce. And what about his underlying argument that this is sort of an analogy. We frequently in law have this idea that when something is void, ab initio, it can be attacked at any time. Yes, Your Honor. What about his argument if the village didn't do something properly from the beginning and it is in fact void at its inception… Yes, Your Honor. …why shouldn't it be attacked at any time if it was void ab initio? I specifically addressed that argument in my brief, but I can tell you specifically that there's two cases I would refer you to. One is the People Extra Northfield Park District 222, Bill AB 35. And in that case, and I'll paraphrase, if the legislature intended that all jurisdictional defects were preserved for judicial attack, regardless of the passage of time, the statute of limitations would not have been written. Otherwise, void annexations and de facto governmental units, they have to be immune after the passage of time and statute of limitations. That's your interpretation. You're not quoting the case. Oh, I am. But I am, Your Honor. As well, let me suggest this. The case that counsel cited, the People XO graph, Illinois Supreme Court in 2003. This arose in the context of a petition that was submitted through the court system as opposed to a petition that was submitted through the village clerk. In that case, they found that if you don't raise your attack within that proceeding, you are barred from forever attacking it for being void. That, again, is an expression of the intent of the legislature to have finality. I submit that that proposition from BRAC carries into the propositions for annexations that are derived by way of petitions filed with the village clerk. You have to have finality to these things. Otherwise, they would be open endlessly to attack. If this case had been brought in the context of a petition brought before the circuit court, we wouldn't be here. What's the difference between the finality intent of a proceeding that has resulted in annexation by court order versus the annexation that results from the statutory procedure through the village procedures? I submit that it should be the same. There's no difference. They have a year to challenge it after. They don't do it forever, hold it peace. The municipalities are entitled to have the certainty and finality that the legislature intended to have their jurisdictional boundaries established. There's too much at risk, economically, politically, otherwise, to have these things up for grabs for time on end. I submit that there are some very difficult case law, some very difficult statutory construction. I am guided by the notion that we have to have certainty and finality with jurisdictional boundaries. And that is what the legislature has said. Well, so you've got the better argument on policy, and he's got the better argument on the literal language of the statute. And he's the first one that came up with this literal language of the statute? I mean, nobody else has tried this before? This has also been addressed in the Mount Prospect case, Your Honor. And the Mount Prospect case reminded me of that. Yes, that was where they had the – With the distinction between asserting a defense as opposed to – And they found effectively in that case that while it was raised as a defense, it effectively was being – effectively it was an action, and that it related back by the 13-217. Again, that case gives me difficulty as well. I believe that that was the correct result in that case because the time that had passed from the expiration of the one-year challenge was one week. And again, in that factual setting, you have two competing municipalities vying for the same property. They're trying to establish a priority. Who beats whom to get their ordinance adopted or get to the courthouse and get the judgment? In this case, we don't have that. We have one municipality, and we have a property order. There's no priority issue. They're not competing against each other. I guess I'm confused by that. I thought Senior Prospect Heights case, is that the one you're talking about? Yes, Your Honor. I thought that was applying the old version of the statute, though, that would have given them an easier position here, no? Wasn't it amended after that case? Yes, it was, Your Honor. So they say in that case, okay, but it's been amended. It no longer talks about whether there was jurisdiction. You know what? I may have misstated, Your Honor. I think that I – I thought that case was helpful to them. Yes. It was the Des Plaines case, Your Honor, that I'm talking about. And I'm sorry that the titles are similar. They're not close to each other. They are. And I practice in Rosemont, so I drove through those places all the time. And I'm sorry for that confusion. Having said that, Your Honor, these cases are not easy. You have to be guided, I believe, by what the clear legislative intent is. And each case has their own specific and unique facts that have to be reckoned with. I have no problem with the outcome of any of the reported cases. Okay. So, now, in Des Plaines, the case where you say the same issue was squarely presented, whether or not commencing action was limited to commencing action versus raising a defense. It was. And the answer was, in that case, was filed one week after the one-year anniversary of Des Plaines' annexation. Again, and it arose in an answer. But the effect of what they were asking for was to void the other's annexation. So it was effectively a full warrant. And the holding was what again? The holding was, let me see here. The trial court found that Des Plaines' annexation ordinance was null and void and declared non-prospects annexation to be lawful. And that judgment was affirmed on appeal. So they were permitted to challenge it. And although it was, quote-unquote, a week after the one-year, but it came up as an answer. And they allowed it to be laid back pursuant to 13-217. So how does that distinction help you? It doesn't. I think it's a problem for me. But I think that that case was decided correctly in this case. And I think that in part that the fact that it was only a week after the anniversary I think has something to do with it. Here, we're four years later. I'm sorry, you said the case was decided correctly? Yes, I believe it was, Your Honor. And they allowed the defense to stand even though it was beyond the year? Yes, it was one week beyond. Why do you think that was right? I think that case helps him, doesn't it? Well, no, it's not because the difference is you have two competing municipalities trying to annex the same property. Des Plaines had a petition. Mount Prospect had a petition. The Des Plaines annexation came first in time, but they didn't do it right. And they were served. They appeared and challenged it and raised the defense in answer one week after the expiration of the co-warrantor. But because Des Plaines asserted to establish that we have priority, they were able to attack it. They interjected the issue, and that's what counsel has been saying. Well, they interjected the issue. They advanced the validity of it. And I'm saying no, it's different. Our advancement of the validity of it was in the context of enforcement of the annexation agreement, not what Des Plaines is trying to do. Which was to determine who had the priority. Yes, exactly. And, again, these cases have different factual underpinnings. The issue was different, then, than the issue here. Absolutely, yes. And I believe that Des Plaines' case was correctly decided. Although there are propositions that counsel is relying upon, I believe that are improper extensions to come up with an improper result. Well, the problem for you, though, is you're sort of tacitly conceding that the statute of limitations, there could be some exceptions to it this week. You're carving out an exception, albeit correct. If I would have written it, I would have written it differently. Having said that, I believe that you have to fall back on what the courts of this state have defined as the distinction between an action and an affirmative defense. And applying that, you have to look at what is the legal effect of what they get by the judgment. This is not a breach of contract where I'm asking for money and he doesn't have to pay because the contract's voided. It's more than that. He doesn't have to pay, and he doesn't have to be subject to the zoning, the police powers, or anything else. He's not in that jurisdiction anymore. That's different. Thank you, Your Honor. All right, thank you. Mr. Gaffney of the Republicans? Thank you. Obviously, I have things to learn from Mr. Acker as well. He's an excellent appellate court advocate with a great appellate court demeanor, something us trial lawyers sometimes forget about when we appear before an appellate court. But one of the things that Mr. Acker said was that there was legions of authority for the proposition supporting that these annexations should be final and why. But there was a word that I saw in these cases, and there's an important word that I saw as to why. One of the words that I saw was fairly. In other words, when an annexation occurs and it's fairly occurs. Here, it didn't fairly occur. So I think that there's, yes, there's certainly cases that support Mr. Acker's proposition that you want to, on the one hand, support the finality of annexations. But the important distinction here, and the point that I'm probably most trying to make, is what is the ultimate result that Glen Eyre seeks? All that Glen Eyre seeks is an order saying that the village's complaint attempting to enforce its rights should be denied. That's it. If it were a co-oriento action, or if it would be another type of action commenced by Glen Eyre, attempting to enter an order saying the court finds that the annexation is void ab initio, and therefore that anything occurred relating thereto is deemed void. So if that's the final order, that's an affirmative relief as opposed to merely a defensive position. We're not seeking any such affirmative relief. To the extent that the villages and or possibly other property owners are seeking to rely upon what the village did, that is not what we're trying to abate in any way. But we're saying that the relief, the attempted relief by the village based upon a void ab initio annexation should be denied. That's the end of the story. I don't think that has earth-shattering ramifications. Well, but could it have earth-shattering ramifications? Let me throw this hypothetical to you. When he's talking about if, in effect, there's no statute of limitations, a homeowner could defend against a finalized annexation agreement 20 years later. I mean, theoretically, you could have an entire, huge, giant subdivision out there. And let's say we find out the argument is made later. It was void ab initio. You moved that term. You're going to have thousands of people who are no longer subject to any regulation by the village? If I may, though, but the property would still be in the county. The property would still be subject to regulation by the county. And there's political answers to these questions. Not necessarily answers in the courts, but there's political answers to these questions. Well, what about having structures? For example, your answer, you have all these structures that are in violation of some county ordinance now. They may not have been in violation of the village ordinances, but now they're in violation of the county ordinances. Can't you see a real human complication here? There's potential human complications, yes. It would be hard not to imagine that there could be. But there's also human problems that occurred here. The 13 people who resided there are now subject to the purported village power, for example, and that's just very minor compared to what could occur if a village is allowed carte blanche authority to annex all contiguous properties inappropriately and then say, if you don't jump on me, if you don't file an act, commence an action within one year, you're done. You're done forever. Your property is now subject to us forever because you didn't take the initiative and overturned that which we did wrong in the first place. Well, turn that around and say the homeowner, his example, you know, lies on their haunches for 20 years knowing they've got this in their hip pocket. They're just waiting. When the village tries to enforce any disorders against me, I'm going to pull this out. Does that sound fair? It's certainly an issue, I understand. But to me, it's what the legislature intended. Once the year goes by, they've got to keep it in their pocket. They can't do anything with it until it's already in response anyway. They may not even know about it for a year. Well, aren't they supposed to know about it? Aren't we all presumed to know? We would be probably presumed to know that. I mean, you'd be on constructive notice, for sure. You may not be on actual notice. People may be on constructive notice without being on actual notice. And I guess I keep going back to the legions of authority. If you want to talk about the legions of authority from this court and the Illinois Supreme Court, when dealing with statutes that stand for the proposition that the court will not imply legislative intent where none is expressed, where courts have said a court will not rewrite statutes to make them consistent with a court's ideas of orderliness or public policy. I mean, this court has said that on multiple occasions, and so has the Illinois Supreme Court. That's exactly what the situation is. And if there is an answer, may I, with all due respect, suggest that the answer to the villages problem here and potentially elsewhere is legislative in nature. All right, well, thank you both for your arguments. We're going to take the matter under advisement, and we'll issue a decision in due course. We'll take a brief recess before the next case.